TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
SOLOMON KIM (Cal. Bar No. 311466)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2450
     Facsimile: (213) 894-0140
     E-mail:    solomon.kim@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>LUIS DALHET HIPOLITO,<br><br>           Defendant. | No. CR 25-00596-SVW<br><br>GOVERNMENT'S *MOTION IN LIMINE* TO PRECLUDE SELF-DEFENSE<br><br>Hearing Date: February 9, 2026<br>Hearing Time: 11:00 a.m.<br>Location:     Courtroom of the<br>              Hon. Stephen Wilson |

     Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Solomon Kim, hereby files this motion in limine to preclude defendant from raising a self-defense theory at trial.

//

//

//

1      This motion is based upon the attached memorandum of points and
2 authorities, the files and records in this case, and such further
3 evidence and argument as the Court may permit.[1]

4  Dated: February 2, 2026            Respectfully submitted,

5                                     TODD BLANCHE
                                      Deputy Attorney General
6                                     BILAL A. ESSAYLI
                                      First Assistant United States
7                                     Attorney

8                                     ALEXANDER B. SCHWAB
                                      Assistant United States Attorney
9                                     Acting Chief, Criminal Division

10
                                              /s/
11                                    SOLOMON KIM
                                      Assistant United States Attorney
12
                                      Attorneys for Plaintiff
13                                    UNITED STATES OF AMERICA

---

[1] The government met and conferred with defense counsel via email, and defense counsel indicated that "defendant's testimony and the video footage will make a prima facie case of self-defense."

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In June 2025, defendant Luis Hipolito interfered with officers during an immigration operation in Downtown Los Angeles by using his body and vehicle to prevent them from leaving the scene of an arrest. Despite repeated commands from U.S. Immigration and Customs Enforcement ("ICE") Officer C.G. to move away, defendant refused to comply, continued yelling obscenities, and moved closer to the officer.  Officer C.G. then deployed pepper spray, at which point defendant struck him in the face with a closed fist.

The government anticipates that defendant may raise a self-defense claim to the § 111(a)(1) charge at trial.  There are two types of self-defense claims in a § 111 case: one involving the use of ordinary force by an officer and another involving the use of excessive force by an officer.  Model Crim. Jury Instr. 9th Cir. 5.10 and 8.3 (2022).  For both defenses, defendant must establish that the officer's use of force was unlawful.  Because defendant cannot establish a prima facie case of either, this Court should preclude defendant from raising a self-defense claim at trial.

**II.   STATEMENT OF FACTS**

On June 24, 2025, during an immigration enforcement operation in Downtown Los Angeles, officers from ICE, accompanied by agents from the Federal Bureau of Investigation ("FBI"), pulled their car to the side of the road to speak with an individual.  When officers approached, several individuals fled.  As one ICE officer, C.G., tried to pursue one of the fleeing subjects, a bystander, Andrea Velez, stepped into his path, made physical contact with him, and

prevented him from continuing the pursuit.  As a result, officers C.G. and C.C. tried to arrest Velez.[1]

While officers were attempting to arrest Velez, defendant stopped his vehicle in the middle of the road, blocking a law enforcement vehicle from leaving.  Defendant and his sister exited the car and began filming the officers.  Defendant attempted to pull Velez away from the officers, and officers pushed defendant back and repeatedly directed him to step away.  Defendant refused to comply and continued filming along with his sister.

Defendant then approached one of the officers and began aggressively yelling, demanding that the officer identify himself. Defendant shouted: "shut the fuck up" and "you're not going to fucking tell me nothing."  Defendant admitted to "blocking" the officers and stated that he was calling 911.  After officers placed Velez in their vehicle and attempted to leave, defendant, along with several others, stood in front of the lead law enforcement vehicle, blocking its path.[2]

Officer C.C. got out of his car to clear the path.  He repeatedly instructed defendant to move, but defendant refused. Defendant continued yelling profanities and walked back closer to C.C.  C.C. warned defendant multiple times that he would deploy pepper spray if defendant did not step back.  When defendant still refused to comply, C.C. deployed pepper spray.

---

[1] Velez was later charged by criminal complaint, but those charges were dismissed on the government's motion.  See 25-MJ-03896.

[2] After being placed in the car, Velez at one point managed to escape and run away.  However, LAPD, who had arrived at the scene by that point, caught her and returned her to ICE officers.

Immediately after being sprayed, defendant closed the distance between himself and officer C.C. and struck C.C. in the face with a closed fist, breaking his glasses and causing a facial contusion.

Upon witnessing the assault, several officers moved to arrest defendant. As officers attempted to take defendant into custody, defendant resisted and had to be forced to the ground. Officers struggled to secure defendant's arms to apply handcuffs while defendant continued to resist their efforts.

At the same time, multiple bystanders--both on foot and in vehicles--converged around the officers. Individuals gathered within close proximity, shouting, filming, and yelling expletives at the officers. The scene became increasingly chaotic, with officers attempting to maintain control of defendant while also managing the growing crowd and ensuring officer safety. After several minutes, officers were able to secure defendant in handcuffs and leave the area.

**III. ARGUMENT**

Defendant must put forth "evidence upon which the jury could rationally sustain the defense." United States v. Houston, 648 F.3d 806, 816 (9th Cir. 2011) (upholding preclusion of affirmative defense of duress based on insufficient proffer). "If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial." United States v. Cramer, 532 F. App'x 789, 791 (9th Cir. 2013) (upholding order excluding self-defense theory at trial when defense proffer was insufficient to meet elements as matter of law); see also United States v. Biggs, 441 F.3d 1069, 1071

(9th Cir. 2006) (discussing requirement defendant proffer elements of self-defense before trial).

    To establish a self-defense claim (whether in response to the ordinary use of force or excessive force by a federal officer), defendant must establish prima facie evidence that the officer's use of force was unlawful.  Here, defendant has not and cannot establish such evidence.  Officer C.C. deployed pepper spray on defendant after providing him with multiple warnings and opportunities to step aside.  Defendant did not comply and instead continued to block law enforcement from leaving and aggressively approached officers while yelling obscenities.  Under these circumstances, C.C.'s use of pepper spray was lawful and appropriate.  ICE's use-of-force policy authorizes the use of non-lethal, intermediate force, including pepper spray, when objectively reasonable and necessary to carry out law enforcement duties.  In particular, such force may be used in situations where empty-hand techniques are not sufficient to bring a disorderly or non-compliant subject under control.  When defendant failed to comply with C.C.'s repeated warnings and commands, C.C. appropriately used pepper spray so that officers could leave the scene.  Defendant's bare assertion that his testimony and the video footage will establish a prima facie case is unsupported and legally insufficient to warrant a self-defense claim.

    In addition, defendant cannot establish that he used no more force than what appeared reasonably necessary under the circumstances to protect against unlawful force.  Pepper spray is a standard, non-lethal compliance tool designed to prevent escalation and create distance.  A reasonable person in that situation would withdraw, shield himself, or comply—not advance toward an officer and throw a

4

punch.  Striking the officer after the spray had been deployed is not defensive conduct; it is retaliatory.  A punch capable of causing injury is disproportionate to the temporary effects of pepper spray and was not reasonably necessary to prevent further harm.  On these facts, defendant's own version of events shows escalation, not self-defense.[3]

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant its motion to preclude defendant from raising a self-defense theory at trial.

---

[3] Defendant likewise fails to make a prima facie showing for a self-defense instruction based on an officer's ordinary use of force, which requires evidence that he did not know the officer was a federal officer.  Body-worn camera footage shows that the officers who interacted with defendant, including C.C., wore tactical vests clearly labeled "POLICE" and displayed badges marked "ICE."  In fact, officer C.G. wore a face mask with the words, "Federal Agent," written across it.

5